UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 17-30022-TSH |
| | ) | |
| (2) MIGUEL BETANCOURT, | ) | |
| (3) ISAAC CARDONA, | ) | |
| (4) RAFAEL CARDONA, SR., and | ) | |
| (5) JOSE MARTINEZ, | ) | |
| Defendants | ) | |

MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION
FOR PROTECTIVE ORDER
(Dkt. No. 169)

Four defendants, Miguel Betancourt, Isaac Cardona, Rafael Cardona, Sr., and Jose Martinez, are charged by superseding indictment with conspiracy to distribute and possess with intent to distribute cocaine and money laundering. Another individual, one Victor Hugo Gonzalez, is also charged in the superseding indictment. He was arrested in California and released pending trial on the basis of an unsecured bond signed by his parents. Gonzalez fled and remains a fugitive. The court heard argument from the parties about entry of a protective order at the March 13, 2019 final status conference and set deadlines for written submissions on the question from the parties. Now before the court is the government's Motion for Protective Order (Dkt. No. 169). The government submitted a proposed protective order with its motion (Dkt. No. 169-2). Two of the defendants submitted written oppositions to the government's motion (Dkt. Nos. 170, 171). For the reasons set forth below, the court grants the Government's motion. The government's proposed protective order will be signed and entered as an order of the court.

I. RELEVANT BACKGROUND

The superseding indictment in the instant case arose out of a multi-year Title III investigation into cocaine and fentanyl importation from Mexico to California, from where it was distributed to other locations, including the Springfield, Massachusetts area. The government represents, based on its investigation, that the Springfield-based activities of the drug trafficking organization in which the defendants allegedly participated are but a small part of the enterprise's overall activities, which are the subject of continuing investigation in one or more other districts. The Springfield defendants were arrested on March 21 and 22, 2018. On April 30, 2018, the government provided the defendants with automatic discovery, including but not limited to the documents related to the Title III intercepts, including the intercepted communications and the underlying applications and court orders. *See* Local Rule 116.1. In June 2018, the government supplemented its automatic discovery, producing a majority of the information it is required to produce under Local Rule 116.1. Since June 2018, the government has made additional disclosures, modest in scope, as additional information has become available. The government has not asked that any of the information it has produced thus far be the subject of a protective order.

With the initial pretrial conference approaching, the government seeks a protective order in advance of producing a small amount of "sensitive materials obtained in the course of an investigation outside of this District" (Dkt. No. 169 at 3). The government has not described the nature of these materials in its motion but has offered to make the materials available for *in camera* inspection by the court (Dkt. No. 169 at 3 n.1). Defendant Jose Martinez objects to the entry of any protective order (Dkt. No. 171). Defendant Rafael Cardona, Sr., objects to so much of the government's proposed protective order as provides, in paragraph 4, that

> Prior to disclosing the Sensitive Discovery Materials to authorized persons, or the defendant, defense counsel shall make the person to whom they wish to disclose

>the Sensitive Discovery Materials aware of this Order and provide them a copy of it. In addition, prior to making any such disclosure, defense counsel shall ensure that the person to whom disclosure is to be made agrees to abide by the terms of this Protective Order and signs a copy of this Protective Order. Defense counsel shall maintain a list of persons to whom materials are disclosed and retain copies of the Protective Order signed by such persons. On motion and for good cause shown, the government may seek disclosure of the list of persons and copies of the Protective Order signed by such persons.

Dkt. No. 169-2 at 2, ¶ 4.[1]

## II. APPLICABLE LAW

Pre-trial discovery in criminal cases, "'unlike the trial itself, is usually conducted in private.'" *United States v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) (quoting *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999)). "Because discovery is a private process between the parties to an action (even if governed by specific rules and managed by trial judges), courts generally view the documents or materials shared between them as outside the judicial function and therefore not presumptively accessible." *Id.* Indeed, the First Circuit has said that "there is no tradition of access to criminal discovery." *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013). For this reason, "[p]rotective orders in criminal cases are not uncommon." *United States v. O'Keefe*, Criminal No. 06-0249(PLF), 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007).

Rule 16 of the Federal Rules of Criminal Procedure provides, in pertinent part, that a court may, "for good cause, deny, restrict, or defer discovery or inspection or grant other appropriate relief." It is well-settled that good cause for a protective order precluding the public disclosure of material produced in a criminal case requires a particularized and specific showing

---

[1] The government's memorandum refers to the above-quoted provision as appearing in paragraph 5 of the proposed protective order. In the proposed protective order attached to the government's motion, the provision quoted above appears as paragraph 4 (Dkt. No. 169-2 at 2).

3

of need.  *See United States v. Bulger,* 283 F.D.R. 46, 52 (D. Mass. 2012) (citing *United States v. Luchko*, Crim. No. 06-319, 2006 WL 3060985, at *3 (E.D. Pa. Oct. 27, 2006)).  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."  *United States v. Wecht,* 484 F.3d 194, 211 (3d Cir. 2007). Whether a protective order should enter, and what the terms of any such order should be, are matters "'falling peculiarly within the discretion of the trial court.'"  *Bulger*, 283 F.R.D. at 53 (quoting *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988)).  Courts should take care, however, to ensure that the limits on dissemination imposed by a protective order are no broader than necessary to accomplish the goals of the protective order.  *See Smith*, 985 F. Supp. 2d at 523-24.

III. DISCUSSION

The government has produced most of the automatic discovery in this case without a protective order.  Its request for confidentiality as to a limited amount of information is narrowly tailored and designed to protect against the dissemination of information that might jeopardize an ongoing criminal investigation in another district.[2]  "As a general proposition, courts have repeatedly recognized that materials . . . can be kept from the public if their dissemination might 'adversely affect law enforcement interests.'"  *Smith*, 985 F. Supp. 2d at 531 (quoting *United*

---

[2] While the objecting defendants have not seen the material for which the government seeks protection and thus cannot raise objections to limits on its dissemination based on its contents, neither objecting defendant has requested that the court conduct the *in camera* inspection offered by the government.  Acknowledging that the government has the burden of demonstrating that early disclosure of Rule 16 material could jeopardize an ongoing investigation in another district, *see Smith*, 985 F. Supp. 2d at 531, in view of the nature of the case, which involves the alleged distribution of controlled substances sourced from Mexico, and the fact that the government has not sought confidentiality as to any other information turned over as automatic discovery, the court accepts the government's representations about the sensitivity of the information for which it seeks protection and considers an *in camera* review unnecessary in these circumstances.

*States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995); citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006); *United States v. Madoff*, 626 F. Supp. 2d 420, 427 (S.D.N.Y. 2009); *United States v. Park*, 619 F. Supp. 2d 89, 94 (S.D.N.Y. 2009); *United States v. Bin Laden*, No. S(7) 98 CR. 1023 LBS, 2001 WL 66393, at \*2 (S.D.N.Y. Jan. 25, 2001); *United States v. Milken*, 780 F. Supp. 123, 127 (S.D.N.Y. 1991)). The court infers from the government's representations that disclosure at this time of the information that would be subject to the proposed protective order would reveal targets of investigation in another district who might destroy evidence and, like the absent Gonzalez, flee to avoid prosecution if they knew they were in the government's sights. Because the government's narrowly-tailored request for a protective order to protect an on-going investigation in another district is justified, the court rejects Mr. Martinez's wholesale objection to entry of any protective order. *See id.*

Mr. Cardona, Sr. objects to the terms in paragraph 4 of the proposed order that would require defense counsel to obtain the signature on a copy of the protective order of any individual to whom counsel shows confidential material that is the subject of the protective order and maintain a list of individuals to whom confidential material is shown. He contends that the provision in paragraph 4 which authorizes the government to seek disclosure of the list of individuals for good cause shown is unduly burdensome (Dkt. No. 170 at 2). Mr. Cardona, Sr., apparently argues that there is a risk that requiring a third party to sign a copy of the Protective Order before being shown Sensitive Discovery Material may chill the preparation of Mr. Cardona, Sr.'s, defense (Dkt. No. 170 at 2). Mr. Martinez joins Mr. Cardona, Sr., in objecting to this provision in the proposed protective order, apparently contending that the requirement that Mr. Martinez keep a record of the individuals to whom Sensitive Discovery Material is shown

may turn defense counsel into a witness if the government "makes a determination that an unlawful dissemination has occurred" (Dkt. No. 171 at 2).

The court rejects Mr. Martinez's complaint that entry of a protective order that requires that defense counsel keep a record of those to whom Sensitive Discovery Material is shown is an undue burden. First, this requirement applies to a very small amount of the automatic discovery turned over to Mr. Martinez. The government has identified a compelling law enforcement interest as a basis for the protective order, and, by pointing to Mr. Gonzalez's immediate flight following his pretrial release, supported its assertion that there are genuine risks that unknown third parties will destroy evidence or flee from prosecution, compromising an investigation in another district, if they learn of a pending investigation through the improper dissemination of Sensitive Discovery Material. As a safeguard against the possible intrusion into the attorney-client relationship envisioned by Mr. Martinez, the proposed protective order requires the government to establish good cause to believe that any improper dissemination was linked to Mr. Martinez before the court authorizes access by the government to the list of individuals to whom Mr. Martinez's attorney showed Sensitive Discovery Material. This procedure, to which Mr. Cardona, Sr., objects on slightly different grounds, addresses the Government's interests in preventing unwarranted disclosure of protected materials while only minimally affecting the defendants' ability to prepare for trial. *See generally, United States v. Lindh*, 198 F. Supp. 2d 739 (E.D. Va. 2002); *see also Smith*, 985 F. Supp. 2d at 544-45. This is particularly true where the protective order would only apply to a very small subset of the government's automatic discovery materials and those materials are represented to focus on an investigation in a district other than Massachusetts. Absent a signature on a copy of the protective order, potential witnesses and sources of information to whom the defendants show Sensitive Discovery Material

cannot be shown to be bound by the terms of the proposed protective order. Further, the signature requirement is a useful reminder and reinforcement of the confidentiality obligation. These considerations outweigh defendants' objections to the signature requirement, which will, therefore, remain a provision of the protective order.

IV. CONCLUSION

For the foregoing reasons, the government's motion for a protective order is GRANTED. The court will enter the protective order proposed by the government as a separate order of the court.

Dated: April 22, 2019  /s/Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. MAGISTRATE JUDGE